United States Court of Appeals for the Ninth Circuit is now in session. Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. I'm not sure who is exactly there, so I'm making it a broad description. Before we go into our oral arguments, we have three cases that are submitted, which I want to take care of at this point. They are Lobo de Quintanilla v. Bondi, Phillips v. Bisagnano, and Unimax Communications LLC v. T-Mobile USA, Inc. With that, we'll now hear argument in our first argued case of the day, which is Yesenia Oliva Molina v. Bondi. And I believe that Mr. Costa, you're up first. Please proceed. Thank you, Your Honor. Good morning. May it please the Court. My name is Nicholas Costa, and I represent the petitioners. I would like to reserve three minutes for rebuttal. We'll try to help you, but keep your eye on the clock. I'm sorry? I said we'll try to help you, but keep your eye on the clock. Okay. Sure thing. Thank you. Your Honors, our focus today is narrow. This case must be decided under the law that now governs, not the law that existed when the agency ruled. Intervening legal developments have displaced the framework the Board applied. And under INS v. Ventura, the agency must apply the current governing standards in the first instance. Because the denial rests on a superseded legal framework that has never been reassessed under controlling law, remand is required. And importantly, Your Honors, that means this Court should not reach nexus now, because the legal foundation of the denial has been displaced. The government is urging this Court to affirm a decision rooted in obsolete law, precisely what Ventura forbids. First, the government's position effectively asks the Court to affirm the denial under the family-based particular social group framework articulated in matter of LEA 2. But LEA 2 is expressly grounded in Chevron deference, on that premise that the agency's interpretation was entitled to controlling weight. When the Supreme Court overruled Chevron in Loeper Bright, the interpretive foundation for LEA 2 was removed. Under Ventura, this Court cannot affirm a decision that rests on a legal framework the Supreme Court has now rejected. Second, the government framework for family-based PSGs has since been restored in matter of RERM and JDRM. In that case, the Attorney General chose to retain the outcome of LEA 2, but only after independently reevaluating the statute without Chevron. The Board's decision here predates that Chevron-free analysis and never applied it to this family. The government responds that nexus law has not changed, but that misses the sequencing. Nexus is step two. The agency must first determine PSG cognizability under the restored independent judgment framework. That step has never been performed by the BIA in this case. Ventura requires that the Board conduct that analysis first. And RERM makes clear that this reassessment is not optional. The Attorney General herself recognized that LEA 2 relied on Chevron to find the statute ambiguous, and only after reevaluating the INA did she adopt that reading as the best interpretation. The decision below never went through that required Chevron-free inquiry. Under Ventura, that ends the matter. The Board must apply the correct post-Loeper Bright standard. I thought that here that the agency assumed that the particular social group was cognizable. So I guess I'm struggling to understand how this new case really has any bearing here. Thank you, Your Honor. Assumption is not analysis. Ventura requires the agency to make the actual legal determination, not skip it. PSG cognizability informs the Nexus analysis, an assumption made under a now-abandoned interpretive methodology. That cannot substitute for a required legal finding. Add the fact that we have, in addition to the change in law, there has been a material change in facts. Both independently requires remand. I mean, together, they both make remand unavoidable. The Board's prior nonpolitical motive finding must be revisited in light of new official evidence that did not exist when it ruled. The United States has since designated the cartel network associated with Los Polones as a foreign terrorist organization, or FTO. The government has taken the position that this designation is irrelevant because it reflects only the U.S. government's view. Respectfully, that misunderstands the point. We are not arguing that the FTO designation retroactively created a political opinion for the family. We are arguing it materially changes the political characterization of the persecutor, and that directly affects how motive must be assessed. An FTO is, by definition, an entity whose operations implicate political power, state authority, and public order. Opposition to such an entity carries a distinct political dimension, which is the context required for an imputed political opinion under BORA. This new classification is material evidence the Board is required to consider. Counsel, with respect, you're arguing the merits of the case, basically. But I gather that your primary point is that in light of the fact, from your perspective, that the BIA did not specifically address the impact of Chevron, that that's the big issue. That it would be sent back to evaluate some of the merits points that you're making. Is that correct? That, plus this new material evidence. But the new material that you're talking about is basically merits-based, right? Correct, Your Honor. Okay. Yeah. So, yeah, exactly that. The agency must apply its expertise to new significant evidence in the first instance. Ventura reinforces that requirement here. Now, the government's position— What about Judge Thomas's point that the BIA assumed your point about Nexus and the PSG? We many times in our cases, if you will, sidestep other issues by basically rendering them irrelevant because there's a decision already. And since that was in your favor, why is Judge Thomas's point not correct? Because the Nexus analysis is inseparable from how the PSG is conceived under the correct legal standard. The legal framework shapes the lens through which motive is evaluated. When the legal standard governing PSG shifts, the Nexus evaluation must be reassessed as well. The board's Nexus finding was predicated on a superseded framework and must be re-evaluated under current law. It could be that we get a similar or the same outcome. But the framework has changed, and so we need to look at that first. The government's position is that any procedural error was harmless and that the new evidence is immaterial. But that argument assumes the board's mean-to-an-end motive finding was correct. The record shows more than information gathering in this case—threats to kill the entire family, the violent beating of the father. Those reflect retaliatory and punitive acts against the family as a unit. The agency has never evaluated those facts under the correct legal standard, nor with the new FTO evidence. And to be clear, we are not asking this court to decide Nexus today. The point is narrower because the agency applied superseded law and lacked the chance to consider material new evidence. Its Nexus finding cannot be treated as reliable. That makes the error not harmless, and remand is required. Before I reserve time, one final point on efficiency. A remand is not only legally required, it is the most practical and efficient resolution here. Petitioners are now eligible to adjust status based on approved family-based petitions. If the agency grants that relief, this case reaches a permanent lawful resolution without further court involvement. This would be a targeted remand, Your Honors. Limited to applying current law, new material facts, and considering the relief now available. That approach both honors Ventura and promotes judicial economy. Remand here is not a detour. It is the most efficient, fair, and legally proper outcome. It allows the agency to do what only the agency can do—apply the correct standards first and consider the changed circumstances. For these reasons, we respectfully ask the Court to grant the motion to remand, vacate the Board's decision, and return the case for reconsideration under the correct and current law. I will reserve the remainder of my time. Okay, very well. Thank you. All right. Next, we'll hear from Mr. Tucker from the DOJ. Thank you. May it please the Court, Colin Tucker for the Attorney General. With respect to asylum and withholding of removal, the government strongly disagrees that remand is required here. Each petitioner's claim straightforwardly fails the nexus requirement. The child petitioner cannot show the harm he fears was or will be inflicted on account of political opinion. The parent petitioners cannot show the harm they fear was or will be inflicted on account of family membership. Regarding the recent decision in JDRM, which reverts to LEA 2— Counsel, with regard to family membership, what about the factual findings that Mr. Costa articulated, which is that there were threats to the family unit as a whole, not merely attempts to find the son? Your Honor, I disagree with that characterization of the facts, to be blunt about it. I believe that there were threats directed to the mother and the father by a gang that made very clear throughout the entirety of its interactions with them that its interest, its sole interest, was in finding the son. There's no evidence in this case of animus towards the family per se. And we know that from the fact that no other family members were ever targeted, from the fact that the gang, in all of its interactions, stated only that it was interested in recruiting the son. I thought that after the father said that the son was no longer there, I thought they said, we know where you live and we're going to come and kill all of you. Well, I think that what they said was that they intended to check and verify whether that it was true that the son was no longer living at that location, Your Honor. And what they then did after that is to leave the father to himself. They never again interacted with him in any way, presumably because they confirmed that the son was no longer there. And for that reason, they no longer had any interest in the family members. Again, that speaks to the fact that the gang was interested solely in the son and had no animus per se for the family. Counsel, you, like your friend on the other side, have essentially gone to the merits, but your opponent raised the Chevron issue, claiming that the BIA simply didn't address the Chevron impact on this case. What's the government's position on that? The government's position, Your Honor, is that Chevron itself is really neither here nor there. We know that in LEA 2. We know it's here because we've got it. That's fair, Your Honor. It is in that sense here, I suppose. I guess more accurately stated, the government's position is that Chevron considerations don't warrant remand here because the nexus analysis has never been questioned from day one. It was set forth in LEA 1. LEA 2 accepted LEA 1. The third LEA reverted us to the first LEA, and JDRM, by taking us back to LEA 2, effectively adopts the nexus analysis from LEA 1. I also want to address very quickly, I agree with, I think, two separate judges now have now indicated that cognizability of a particular social group and nexus are two distinct issues. Both the agency and this court have routinely bypassed one of those issues in order to rule solely on the other. I don't know of any case law which suggests that the agency can't make a nexus determination without reaching the cognizability of a group. Well, you all obviously are not agreeing. You're talking past each other. But your opponent, if I understood his argument correctly, is saying basically under current case law, since the BIA did not consider Chevron, you have to remand it for them to consider the merits issues basically on a first-come basis. That's directly opposite to what I understand what you're saying. Is that correct? That's correct, Your Honor. As far as Chevron goes, I don't know of any reason why that would require remand here. And I note that the board routinely decides nexus and cognizability issues without citing Chevron or going into Chevron analysis one way or the other. I don't, at this point, again, know of any cases where that is required remand. So from the government's perspective, Chevron really has no impact here because Chevron deference never played a role in the law that the BIA applied. Is that correct? I think that effectively sums it up, Your Honor. Yes. If there are, I know, completely separate issue concerning the temporary board member's appointment that's been briefed quite heavily in this case. If the court has questions with respect to that, I'm happy to take them. But otherwise, I'm content to rest on the breeze. I gather that the government's position on this is that since the attorney general is not specifically named in the regulation, she has the right to name the director on a temporary basis. And that's the end of the story. Is that correct? That is, in one sense, what it boils down to, Your Honor. We have a few different points on the issue. That is chief among them, I guess we can say. And I do think the language is straightforward. The regulation at the time put constraints on the EOR director without mentioning the attorney general. And the appointments here were pursuant to the attorney general's appointment authority. Therefore, the regulation is effectively irrelevant. I can conclude if there's nothing else. Any other questions by my colleagues? No, thank you. Thank you. Thank you. So, Mr. Costa, you have some rebuttal time, a lot of rebuttal time. Thank you, Your Honors. Just a few brief points in rebuttal. With respect to the merits, Your Honors are actually correct. The persecutors did point out and said specifically that they were going to kill Petitioner Ulysses Jr. and his family. Add the fact that what was kind of ignored down below, which was kind of infuriating for counsel, was the fact that the age of my client, who was 15 to 16 when he was working with his communitarios, volunteering with these auto defenses and police, his political opinion wasn't even looked at through the lens of his age in this particular place, or at least not in a way that I think is informative to the court here, certainly. And back to the point with these FTO designations is now we have a new lens in which to look at this group. It's not just this criminal organization, but rather this could certainly change the analysis on political opinion, which could then change the analysis on family PSG. To the point on Chevron, you know, the legal framework has structurally changed. The BIA's analysis of the PSG and Nexus took place under a Chevron-based interpretive model. After Loper Bright, the agency must conduct an independent Chevron-free analysis in the first instance. And what is the statute or regulation to which you refer when you say that the analysis of Nexus and PSG was conducted in this case? Well, it would be under the, as far as PSG is concerned, it was the BIA that looked through and found that PSG was ambiguous. And so that's when they rendered LEA 1 and then LEA 2 to themselves. Back to the point of the FTO evidence, it's material and outcome relevant. The FTO designation is not a mere policy development. It alters the legal character of the persecutor. The board has never assessed whether opposition to a now designated foreign terrorist organization or its network satisfies the imputed political opinion standard under Borja. That analysis belongs to the agency. Because the BIA has not applied the correct law to the current factual record, remand is not prolonging the case. It is the only lawful path forward under Ventura. And that is my rebuttal. If there's anything else the court would like me to touch upon, as far as the temporary BIA members are concerned. Honestly, because of the legal shift in this particular case, I think that issue becomes moot after remand, to be perfectly honest with you. And doesn't even need to reach a decision on temporary BIA members now. And moot because the regulation has changed in 2024 to allow renewable BIA members. But again, we don't need to even, the court need not even get to that determination given the Ventura remand that is required here. I'm sorry. Counsel, just assuming just for the sake of argument that we don't agree with you that remand is necessary. Are you still asking us to, you know, are you maintaining your argument about the temporary appellate immigration judge? Just to understand, you know, what your what your position is. Certainly. And we would not, we would preserve that, Your Honor. But the court need not reach it because Ventura resolves this case. Yeah. Thank you, Justice. Other comments, Mr. Crossley? Nothing further, Your Honors. Thank you. We thank both counsel for their timely and brief arguments. The case of Molina versus Bondi is submitted.
judges: SMITH, NGUYEN, THOMAS